IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| JOE EDWIN MONK,<br><br>    Plaintiff,<br><br>V.<br><br>UNUM LIFE INSURANCE COMPANY<br>OF AMERICA<br><br>    Defendant. | §<br>§<br>§<br>§<br>§   Civil Action No. _____<br>§<br>§<br>§<br>§<br>§<br>§ |

COMPLAINT

Plaintiff, for his Complaint against UNUM Life Insurance Company of America, would show as follows:

Parties, Jurisdiction and Venue

1.      Plaintiff is an individual.

2.      Defendant is a corporation and may be served through its registered agent for service of process in Texas, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

3.      Jurisdiction is proper on the ground of the existence of a federal question under 28 U.S.C. § 1331 based on Plaintiff's claim under the Employee Retirement Income Security Act, 29 U.S. C. §1001 et seq. ("ERISA"). Jurisdiction is also proper over Plaintiff's claims under Texas law under 28 U.S.C. § 1367.

4.      Venue is proper.

Facts

5.      In December 2016, Plaintiff was employed as an anesthesiologist with Baylor, Scott & White. Through such employment he was covered by a short-term disability benefit

COMPLAINT – Page 1

policy, and also a long-term disability benefit policy subject to ERISA administered and insured by Defendant numbered 469228 ("ERISA LTD policy"). Prior to and as of December 2016, Plaintiff was also covered by three disability policies issued to him individually numbered 0102561302001, 0102601236001 and 0102509192 ("individual policies").

6. As of December 2016, Plaintiff could no longer work because of cognitive impairments of unknown origin and sought and obtained benefits under the short-term disability policy of Baylor, Scott & White. He received such benefits through June 17, 2017.

7. As of June 5, 2017, Plaintiff was deemed entitled to benefits from Defendant under the ERISA LTD policy under an own occupation standard of disability based on continuation of the same medical condition referred to in paragraph 6. Plaintiff thereafter received long-term disability benefits for the 24-month period during which the own occupation standard of disability was in effect, through June 4, 2019, and for an additional 20 days, through June 24, 2019. He remained entitled to the long-term disability benefits beyond the 24-month period, including beyond the 20 days between June 4, 2019 and June 24, 2019, under an any occupation standard of disability.

8. By letter dated June 24, 2019, Defendant was advised his long-term disability benefits would be limited to the period ending June 4, 2019 on the basis that his disabling condition was due to "Mental Illness" within the meaning of the long-term disability policy, but benefits were paid through June 24, 2019.

9. Plaintiff subsequently, through counsel, by letter dated August 22, 2019, appealed the denial of benefits after June 4, 2019 effected by Defendant's denial dated June 24, 2019. By such appeal, Plaintiff asserted that the disabling condition of Plaintiff did not constitute

a "Mental Illness" within the meaning of the long-term disability policy, which defined Mental Illness exclusively in the following manner:

> A psychiatric or psychological condition classified in the Diagnostic and Statistical Manual of Mental Health Disorders (DSM), published by the American Psychiatric Association, most current as of the start of a disability. Such disorders include, but are not limited to, psychotic, emotional or behavioral disorders, or disorders relatable to stress. If the DSM is discontinued or replaced, these disorders will be those classified in the diagnostic manual then used by the American Psychiatric Association as of the start of a disability.

The appeal referred to medical records of Plaintiff, one of which stated that Plaintiff's "treatment team does not consider his psychiatric/behavioral health diagnoses to be the main impairments determining his disability." The appeal also referred to an April 13, 2017 neuropsychological evaluation of Plaintiff which indicated that he suffered from anterograde amnesia, representing an inability to transfer new information to long-term memory, and an updated neuropsychological evaluation on September 17, 2018, indicating that his testing did not reflect any significant depression or anxiety, and any such depression and anxiety was "isolated only to his recent medical problems and unemployment." Based on these medical records and neuropsychological diagnosis, Plaintiff asserted that no Mental Illness, within the meaning of the long-term disability policy, represented the "etiology of [his] cognitive condition," the basis for the initial denial of long-term disability benefits to him after June 4, 2019. The appeal noted, further, that the updated September 17, 2018 neuropsychological evaluation determined that the likely cause of the cognitive impairments of Plaintiff consisted of hypoxic or anoxic brain injury, meaning loss of oxygen to the brain, from obstructive sleep apnea, caused or aggravated by low oxygen content due to elevation or other reasons, potentially subject to improvement through brain rehabilitation, but not demonstrated as having returned Plaintiff to his pre-disability state of

functioning. The appeal noted, finally, that the updated September 17, 2018 neuropsychological evaluation confirmed continuing cognitive impairments of Plaintiff.

10. By letter dated September 10, 2019, despite the August 22, 2019 appeal, long-term disability benefits were denied beyond June 4, 2019 despite the August 22, 2019 appeal and even though Plaintiff's disabling condition resulting from an unknown cause had not improved, again on the basis that Plaintiff's disabling condition was due to "Mental Illness" within the meaning of the long-term disability policy. The denial acknowledged that Plaintiff's claim to continuing long-term disability benefits was not based on any psychiatric or psychological condition, but on the basis of severe loss of memory due to an "anoxic brain injury due to multiple hypoxic insults over time at an elevation of low oxygen partial pressure." The denial also acknowledged that an evaluation of the etiology of the cognitive impairments of Plaintiff was required. Finally, the denial acknowledged that any improvement in the cognitive impairments of Plaintiff between the 2017 and 2018 neuropsychological evaluations continued to involve global amnesia, while referring to it as psychogenic transient global amnesia despite the fact that the neuropsychological evaluations themselves did not do so.

11. The more detailed basis of the September 10, 2019 denial was that Defendant, on the basis of a review by a purported consulting neurologist reviewer, concluded that the primary etiology for Plaintiff's cognitive impairments is a "behavioral health condition." According to the summary of the review in the September 10, 2019 denial, such a determination was justified by treatment of Plaintiff by multiple physicians even though such treatment did not rule out a diagnosis of early onset Alzheimer's disease. According to Defendant, a treating psychiatrist of Plaintiff did not find any likely causes of the cognitive impairments of Plaintiff other than his depressive disorder, but Defendant admitted that the same psychiatrist determined, in fact, that

depression seems unlikely to be the main disability-driving etiology, but more of a contributing factor. Defendant also admitted that another treating physician of Plaintiff stated that it is hard to know the etiology of the cognitive impairments of Plaintiff and that the progress of Plaintiff was not inconsistent with an acute hypoxic/anoxic event such that the cognitive impairments could not be ascribed primarily to depression or anxiety and may even represent a form of encephalopathy such as an autoimmune disorder. Defendant also admitted that another treating physician of Plaintiff confirmed that the cause of the cognitive impairments is multifactorial, including possible degenerative dementia and obstructive sleep apnea representing mild cognitive impairment. Defendant also admitted that other possible diagnoses were explanatory and that the notion of an hypoxic or anoxic event was consistent with the combination of the altitude at which Plaintiff lived in Vail, Colorado and his mild to moderate bronchiaectasis. Notwithstanding these considerations, Defendant concluded that Plaintiff's condition, including clinical course of improvement, was consistent with recovery from behavioral health conditions. Defendant refused to consult an award of Social Security disability benefits obtained by Plaintiff as of April 25, 2008, while claiming that facts available to Defendant about the award in all aspects of its claim file were considered. Defendant concluded that data did not support anoxic encephalopathy, encephalitis, subclinical seizures, stroke, Alzheimer's or any neurological condition to explain Plaintiff's cognitive impairments, in particular his amnesia. At the same time, Defendant acknowledged that Plaintiff was recommended not to return to the practice of medicine in which he specialized, specifically, anesthesiology.

12. The September 10, 2019 denial was improper for the following reasons:

a. The Mental Illness exception to coverage under the long-term disability policy does not permit what Defendant refers to as a "primary etiology" for an allegedly disabling condition to be used as a basis for invoking the exception.

c. Defendant admitted that an etiology other than a psychiatric or a psychological condition, whether or not those specifically referred to in its September 10, 2019 denial, could be the basis for Plaintiff's continuing cognitive impairments.

d. Defendant failed to properly consider the Social Security disability benefits award to Plaintiff.

e. Defendant failed take into account a brain scan of Plaintiff dated May 1, 2018 finding that he had suffered transient cerebral ischemia in addition to diplopia and memory loss and that the scan revealed minimal scattered white matter hyper intensity's predominantly involving the bilateral frontal lobes with manifestations of migraine headaches or mild microvascular ischemic change.

13. By its denial letters dated June 24, 2019 and September 10, 2019, Defendant improperly relied upon a definition of Mental Illness distinct from that provided for in the long-term disability policy, improperly ignored Plaintiff's medical condition reflected in certain medical records of Plaintiff, improperly misrepresented certain medical records of Plaintiff, improperly dismissed the significance of other medical records of Plaintiff, improperly ignored statements of Plaintiff's impairments and disregarded Plaintiff's award of disability benefits from the Social Security Administration.

14. In connection with its disposition of the claim of Plaintiff under the long-term disability policy, Defendant engaged in conduct not consistent with its fiduciary duty to Plaintiff

under ERISA and in violation of provisions of ERISA and the claims regulations promulgated pursuant to ERISA, including Section 1133(2) of ERISA, requiring that a participant whose claim for benefits has been denied be afforded a reasonable opportunity for a full and fair review by the appropriate named fiduciary of the decision denying his claim, and one or more of the following requirements of 29 CFR 2560.503-1:

    a.    the requirement of 29 CFR 2560.503-1(b)(3) that the claims procedures do not contain any provision, and are not administered in a way, that unduly inhibits or hampers the initiation or processing of claims for benefits,

    b.    the requirement of 29 CFR 2560.503-1(b)(5) that claims procedures contain administrative provisions or safeguards to insure that any benefit claim determinations are made in accordance with governing plan documents and that plan provisions have been applied consistently with respect to similarly situated claimants,

    c.    the requirement of 29 CFR 2560.503-1(b)(7) that all claims and appeals be adjudicated in a manner designed to insure the independence and impartiality of the persons involved in making the decision,

    d.    the requirements of 29 CFR 2560.503-1(g)(1)(i)-(iii), (g)(1)(vii)(A)(i)-(iii), and (g)(1)(C) and (D) as to the content of any adverse benefit determination, including providing the claimant in a manner calculated to be understood by the claimant the specific reason or reasons for the adverse determination, reference to the specific plan provisions on which the determination is based, a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary, a discussion of the decision, including an explanation of the basis for disagreeing with or not following the views presented by the claimant to the plan of healthcare professionals treating the claimant and

vocational professionals who evaluated the claimant; the views of medical or vocational expert to his advice was obtained on behalf of the plan in connection with the claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination, and a disability determination regarding the claimant presented by the claimant to the plan made by the Social Security Administration, an identification of the specific internal rules, guidelines, protocols, standards or other similar criteria of the plan relied upon in making the adverse determination, or alternatively, a statement that such rules, guidelines, protocols, standards or other similar criteria of the plan do not exist,

      e.      the requirement of 29 CFR 2560.503-1(h)(2)(iv) that claims procedures provide for a review that takes "into account all comments, documents, including information necessary for a claimant to perfect his claim and an explanation of why such material is necessary, records and other information submitted by the claimant relating to the claim without regard to whether such information was submitted or considered in the initial benefit determination,"

      f.      the requirement of 29 CFR- 2560.503-1(h)(3)(ii) that any review does not afford deference to the initial benefit determination and be conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that was the subject of the appeal, nor the subordinate of such individual,

      g.      the requirement of 29 CFR 2560.503-1(h)(3)(iii) that the appropriate named fiduciary shall, if any appeal of an adverse benefit determination is based in whole or in part on a medical judgment, consult with a health care professional with appropriate training and experience in the field of medicine involved in the medical judgment,

      h.      the requirement of 29 CFR 2560.503-1(h)(3)(iv) that any medical or vocational experts whose advice was obtained in connection with an adverse benefit determination be

identified without regard to whether the advice was relied upon in making the benefit determination,

  i.  the requirement of 29 CFR 2560.503-1(h)(3)(v) that any healthcare professional consultant in connection with any adverse benefit determination be an individual who was not consulted in connection with the adverse benefit determination that was the subject of the appeal, nor the subordinate of such individual,

  j.  the requirement of 29 CFR 2560.503-1(h)(4) that any new or additional evidence considered, relied upon or generated by the plan, insure, or other person making the benefit determination, or any new or additional rationale, be provided to the claimant sufficiently in advance to enable the claimant to have a reasonable opportunity to respond prior to the issuance of any adverse benefit determination on review,

  k.  the requirements of 29 CFR 2560.503-1(j)(1)-(3) as to the manner and content of any notification of a benefit determination on review, including that notification communicate to the claimant in a manner calculated to be understood by the claimant the specific reason or reasons for the adverse determination and reference to the specific plan provisions on which the determination is based, and

  l.  the requirement of 29 CFR 2560.503-1(j)(6) that any notification of a benefit determination with respect to disability benefits include the following:

    (i)  A discussion of the decision, including an explanation of the basis for disagreeing with or not following:

      (A)  The views presented by the claimant to the plan of health care professionals treating the claimant and vocational professionals who evaluated the claimant;

    (B)  The views of medical or vocational experts whose advice was obtained on behalf of the plan in connection with a claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination; and

    (C)  A disability determination regarding the claimant presented by the claimant to the plan made by the Social Security Administration;

  (ii)  If the adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of change upon request; and

  (iii)  Either the specific internal rules, guidelines, protocols, standards or other similar criteria of the plan relied upon in making the adverse determination or, alternatively, a statement that such rules, guidelines, protocols, standards or other similar criteria of the plan do not exist.

  15.  In connection with the disposition of the claim of Plaintiff under the long-term disability policy, Defendant violated one or more provisions of its Regulatory Settlement Agreement with the Texas Department of Insurance and other state regulators based on the November 18, 2004 Regulatory Settlement Agreement between Defendant and the Superintendent of the State of Maine Bureau of Insurance, among other regulators.

  16.  Based on the terms of the policy, Defendant's June 24, 2019 and September 10, 2019 denials of benefits to Plaintiff under the long-term disability policy are subject to de novo review and, so reviewed, must be determined to have been wrong. Alternatively, based on Defendant's violation of one or more requirements of 29 CFR 2560.503-1, such denials of benefits under the policy are subject to de novo review and, so reviewed, must be determined to have been wrong. Alternatively, based on the application, pursuant to 29 U.S.C. § 1144(b)(2)(A), of Section 1701.062 of the Texas Insurance Codes and Title 28, Part 1, Chapter 3, Subchapter M, Rules 3.201(c), 3.1202 and 3.1203 of the Texas Administrative Code, 28 Texas Administrative Code 3.201 et seq., such denials are subject to de novo review and, so reviewed, must be

determined to have been wrong. Alternatively, based on Defendant's violation of the Regulatory Settlement Agreement referred to in paragraph 15, such denials are subject to de novo review, and so reviewed, must be determined to have been wrong. Again, in the alternative, in the event such denials are subject to review only for abuse of discretion, Defendant, to the extent of any such discretion, abused it.

Administration of claims under individual policies

17. Plaintiff timely asserted claims under the individual policies on account of his disability referred to in paragraph 6, which was determined to begin as of December 7, 2016.

18. Defendant paid claims under the individual policies for a period of time, through November 6, 2020.

19. By letter dated December 2, 2020, Defendant denied further payment of benefits to Plaintiff under the individual policies based on the same rationale justifying denial of continuing benefits under the ERISA LTD policy notwithstanding that there is no "Mental Illness "limitation on benefits under the individual policies.

20. By letter dated April 2, 2021, Plaintiff appealed the denial benefits referred to in paragraph 19.

21. By letter dated May 17, 2021, Defendant finally denied the appeal referred to in paragraph 20. In connection with such final denial, Defendant denied payment of continuing benefits due to Plaintiff under the individual policies despite the fact that its liability to make payment of such continuing benefits was clear. Also in connection with such final denial, Defendant engaged in unfair and deceptive practices by delaying making payment to Plaintiff due under the individual policies of continuing benefits it should have made, and failed to avoid actions causing delay in the provision of continuing benefits to which Plaintiff was entitled, despite the

fact that its liability to make payment such continuing benefits was clear. Specifically, Defendant engaged in one or more of the following practices in violation of Chapter 541 of the Texas Insurance Code: it failed to attempt in good faith to pay continuing benefits due Plaintiff under the individual policies as and when appropriate even when its liability was reasonably clear; failed to promptly provide to Plaintiff a reasonable explanation of the factual and legal basis for the delay in payment of continuing benefits due to Plaintiff; and failed to pay such continuing benefits to Plaintiff within a reasonable time, without conducting a reasonable investigation of Plaintiff's claim to such benefits. Also in connection with such final denial, Defendant did not pay benefits to Plaintiff under the individual policies, Defendant violated Chapter 542 of the Texas Insurance Code in that it did not timely investigate his claims under the individual policies, did not timely begin any investigation of the claims, did not timely accept or reject the claims, did not timely extend the deadline for deciding the claims and did not timely pay the claims. Specifically, after Plaintiff submitted his claims, Defendant did not timely accept or reject the claims within 15 days of the receipt of the claims, further, after Plaintiff submitted his appeal of the denial of his claims, Defendant did not timely accept or reject the claims within 15 days, or within any validly sought single extension under such provisions, and even any extension, Defendant did not timely accept or reject the claims within 15 days. Defendant has also failed to timely pay interest on amount due to Plaintiff on the claims. Plaintiff is accordingly entitled to recover his actual damages, attorney's fees and expenses, pre-judgment interest, and costs of court, statutory additional damages of 18% interest, attorney's fees and costs of court.

Claims

22. For his first cause of action, Plaintiff would show that Defendant wrongfully denied benefits to him under the long-term disability policy. Defendant is accordingly liable under Section 1132(a)(l)(B) of ERISA for all benefits due but not paid to Plaintiff under the long-term disability policy, prejudgment interest thereon and his attorney's fees and expenses and costs of court.

23. For his second cause of action, Plaintiff would show that Defendant wrongfully denied unpaid benefits due to him under his individual policies. Defendant is accordingly liable under Texas law for such benefits, prejudgment interest and his attorney's fees and expenses and costs of court.

24. For his third cause of action, Plaintiff would show that, to the extent it did not pay continuing benefits to Plaintiff under the individual policies, Plaintiff would show that Defendant violated its duty of good faith and fair dealing to Plaintiff in that it delayed making payment of benefits due to Plaintiff under the individual policies despite the fact that its liability to make payment of such benefits was clear. Defendant is accordingly liable for all benefits due but not paid to Plaintiff under the individual policies, compensatory damages, punitive damages, prejudgment interest and for costs of court.

25. For his fourth cause of action, Plaintiff would show that, to the extent it did not pay continuing benefits to Plaintiff under the individual policies, Defendant violated Chapter 541 of the Texas Insurance Code in that it engaged unfair and deceptive practices by delaying making payment to Plaintiff due under the individual policies of benefits it should have made, and failed to avoid actions causing delay in the provision of benefits to which Plaintiff was entitled, despite the fact that its liability to make such payments was clear. Specifically, Defendant engaged in one or more of the following practices in violation of Chapter 541 of the Texas Insurance Code: it

failed to attempt in good faith to pay benefits due Plaintiff under the individual policies as and when appropriate even when its liability was reasonably clear; failed to promptly provide to Plaintiff a reasonable explanation of the factual and legal basis for the delay in payment of benefits due to Plaintiff; and failed to pay such benefits to Plaintiff within a reasonable time, without conducting a reasonable investigation of Plaintiff's claim to such benefits. Plaintiff is accordingly entitled to recover his actual damages, attorney's fees and expenses, pre-judgment interest, and costs of court, and on account of the nature of the conduct of Defendant, including but not limited to its knowing nature, statutory additional damages as well as damages for mental anguish.

26.   For his fifth cause of action, Plaintiff would show that, to the extent it did not pay continuing benefits to Plaintiff under the individual policies, Defendant violated Chapter 542 of the Texas Insurance Code in that it did not timely investigate his claims under the individual policies, did not timely begin any investigation of the claims, did not timely accept or reject the claims, did not timely extend the deadline for deciding the claims and did not timely pay the claims. Specifically, after Plaintiff submitted his claims, Defendant did not timely accept or reject the claims within 15 days of the receipt of the claims, further, after Plaintiff submitted his appeal of the denial of his claims, Defendant did not timely accept or reject the claims within 15 days, or within any validly sought single extension under such provisions, and even any extension, Defendant did not timely accept or reject the claims within 15 days. Defendant has also failed to timely pay interest on amount due to Plaintiff on the claims. Plaintiff is accordingly entitled to recover his actual damages, attorney's fees and expenses, pre-judgment interest, and costs of court, statutory additional damages of 18% interest, attorney's fees and costs of court.

### Alternative Relief on ERISA Claim

27. In light of LINA's violation of one or more requirements of 29 CFR 2560.503-1, remand of Plaintiff's claim against LINA under ERISA for further administrative review may be appropriate prior to full adjudication by this Court of Plaintiff's claim, and Plaintiff accordingly reserves the right to seek remand.

### Jury Demand on Claims under Individual Policies

28. Plaintiff demands a jury to the full extent guaranteed by the United States Constitution with respect to his claims under the individual policies.

WHEREFORE, Plaintiff prays this Court grant his judgment against Defendant for all appropriate relief.

Respectfully submitted,

/s/ Robert E. Goodman, Jr.
Robert E. Goodman, Jr.
State Bar No. 08158100
reg@kilgorelaw.com
Kilgore & Kilgore, PLLC
3109 Carlisle Street
Dallas, Texas 75204
(214) 379-0823
(214) 379-0840 (telecopy)

COUNSEL FOR PLAINTIFF